[Civ. No. 20800. Second Dist., Div. One. July 18, 1955.]

ELMER ADAMS et al., Respondents, v. CARUSO ENTER-PRISES INC. (a Corporation), Appellant.

Roger J. Pryor for Appellant.

Stanley Moffatt for Respondents.

WHITE, P. J.—By their first amended complaint plaintiffs alleged that on November 8, 1953, in Los Angeles County, they entered into a conditional sales contract with defendant

Caruso Enterprises Inc., under the terms of which they agreed to buy a certain 1953 Dodge Coronet automobile from said defendant, that the latter agreed to sell the vehicle to plaintiffs for a total cash price of $3,460.77, less $1,075 net allowance for plaintiffs' 1949 Plymouth automobile, leaving an unpaid balance due of $2,385.77. That said balance was to be paid off at the rate of $49.43 monthly and plaintiffs expressly informed said defendant that they could not afford a contract that called for payment of more than $50 per month. It was then alleged, "That the terms and conditions of said sale were written down on a white memo by Defendant Caruso Enterprises' agent and then said agent had these Plaintiffs sign blank yellow contract forms which said Defendant Company agreed to fill out in accordance with the white memo terms and conditions." That at the time of the transaction here in question, plaintiffs delivered to defendant seller their Plymouth automobile and took delivery of the Dodge car upon the representations, understanding and agreement with defendant seller that the balance due on the contract would amount to no more than $2,385 and that the installment payments would not exceed $50 per month. That subsequently "Plaintiffs received through the mail copies of filled in conditional sales contracts with coupon book calling for said $2,385.00 plus $100.00 for insurance (which Plaintiffs understood they were to pay) and $500.00 finance charges totaling $2,985.00 instead of $2,485.00 as agreed, and calling for payments of $99.43 instead of $49.43 as agreed, per month." Assignment of the contract to defendant Commercial Credit Corporation is then alleged: The complaint further charged that on December 24, 1953, plaintiffs served defendants with written notice of rescission of the contract and offered return to defendants of the Dodge automobile upon delivery to plaintiffs of their Plymouth car, but the defendants refused to rescind the contract.

The second cause of action adopted the averments of the first and then alleged that upon receipt of the "completed contract," which provided for $500 in excess of the orally agreed price, and with payments of $99.43 per month instead of the $49.43 per month as agreed at the time of sale, the plaintiff, Elmer Adams, went personally to Mr. H. J. Caruso, president of the Caruso Enterprises Inc., and protested that the written contract was not in accordance with the oral agreement and the written memo made by the company's agent at the time of sale, and said plaintiff reiterated the fact that he

had informed said Caruso Company at the start that he could not possibly buy any car for more than $50 per month.

Whereupon the said H. J. Caruso personally agreed that if plaintiffs would pay $49.43 per month for three months, he would rewrite said agreement in accordance with plaintiffs' demands. That at that time the said Elmer Adams offered to pay said Caruso the first FOUR monthly payments at $49.43 in advance but the said Caruso then refused to perform this new agreement. It is then alleged that plaintiffs paid to defendant Commercial Credit Corporation, as agent of the codefendant, two monthly payments of $49.43, each "on the new oral agreement made by Mr. Caruso, but with the understanding that said payments were on account of a total balance due of $2,485.00." The third cause of action asked for a declaratory judgment setting forth the rights and duties of the respective parties.

By their answer defendants denied that the monthly installments under the contract were to be in the sum of $49.43, and alleged said payments were to be at the rate of $99.43, per month; denied any oral agreement or contract, and denied generally other allegations of misrepresentation or fraud.

Plaintiffs filed their first amendment to the aforesaid first amended complaint, alleging failure to comply with certain provisions of Civil Code, section 2982, and specifically that no executed copy of said contract was ever delivered.

Defendant then filed its answer and counterclaim, containing general denials, and counterclaiming for plaintiffs' use of said car for 182 days, or $1,820.

During the trial, by leave of court, plaintiffs filed their second amendment to the first amended complaint to conform to proof made at the trial. In this amendment plaintiffs indicated that they elected to stand on their demand for rescission and abandoned their former allegation for reformation of the contract or declaratory relief.

Following trial before the court sitting without a jury judgment was rendered against defendant Caruso Enterprises Inc., for $812.50 and against defendant Commercial Credit Corporation for $247.15. Judgment against the last named defendant was satisfied and is therefore not involved in this appeal. From the judgment rendered against it, defendant Caruso Enterprises Inc. prosecutes this appeal.

Concerning the factual situation surrounding this litigation, plaintiffs testified that on November 8, 1953, they went

to the place of business of defendant Caruso Enterprises Inc., where they orally agreed with said defendant to buy a 1953 Dodge automobile for a cash price of $3,460.77, plaintiffs to be given a net allowance of $1,075 for their 1949 Plymouth, leaving an unpaid cash balance of $2,385.77 plus $100 for insurance, with no finance charges, and payments to be $49.43 a month; that payments of $99.43 were never mentioned; that it was agreed that payments would never exceed $50 a month; that $150 was deducted from the original allowance of $1,225 for their Plymouth for rewriting the contract after three payments of $49.43.

Defendant's witnesses DeWitt Leftwich and Henry Joseph Caruso denied any oral agreement contrary to the terms of the written documents.

Following the foregoing conversation, and on the same day thereof, a document consisting of an original white copy and a yellow carbon copy was prepared and signed by plaintiff Elmer Adams and an agent of defendant Caruso Enterprises Inc. The yellow copy was delivered to plaintiff Elmer Adams and the original white copy was retained by defendant Caruso Enterprises Inc. This litigation is predicated upon and the present appeal must be decided on the basis of this document. Plaintiffs testified they signed the document entitled ''Conditional Sales Contract'' in blank and at no time received a copy thereof. However, as to that document, defendant Caruso Enterprises Inc., in its brief states, ''This defendant never introduced such a document into evidence and at no time in these proceedings has this defendant claimed the same to be the contract between the parties, but merely that it was signed by plaintiffs in blank with the understanding it would be filled in later according to their agreement.'' With reference to a later oral agreement testified to by plaintiff Elmer Adams as having been made with Mr. Caruso, the latter denied it.

That the aforesaid white original and yellow copy, concededly the contract between the parties, do not contain the same factual data is manifest from an inspection of them. As pointed out by plaintiffs, ''. . . it will be noted that the date on the white original is 11/15/53 whereas it is 11/8/53 on the carbon copy. As for the yellow carbon copy given to Plaintiff Elmer Adams, many figures were left out as compared with the original, especially the date for beginning of the monthly payments to wit: This is said to be Jan. 3 1954 in the original but is entirely omitted from the yellow

copy. The figures concerning the allowance to the buyer for his Plymouth car are badly mixed up and do not correspond, and the company's witness at the trial admitted that many of those figures were inserted in the white original after it had been signed by the Plaintiff Mr. Adams and the copy delivered to him. For example on the yellow copy there is an allowance of $400.00 and then to right of this figure the figures $250.00 and $150.00 are inserted without explanation; and in the original white copy the figure $400.00 that was originally in the contract is crossed out and the words 'Less payoff $240.72' inserted. Then in the white copy the net allowance is set forth as being $975.00 whereas it is $875.00 in the yellow copy.''

Another confusing aspect of the contract is that in the body of the instrument the monthly payment is set forth as $99.43, while at the bottom appears the following, ''$150 prepay 1st 3 payments to $49.43—Rewrite.'' At the trial the last mentioned item was explained by defendant Caruso Enterprises Inc., to mean that it would prepay $150 from the trade-in allowance on behalf of plaintiffs, thus reducing the latter's first three payments from $99.43 to $49.43 each and then the contract could be rewritten.

Upon the foregoing rather complicated factual situation, the court, on conflicting evidence, made findings as follows: ''. . . that on November 8th, 1953, Plaintiffs entered into an agreement with Defendant Caruso Enterprises Inc., for the purchase of a 1953 Dodge Coronet four-door automobile for a total cash price of $3,460.77 and Plaintiffs traded in their 1949 Plymouth automobile as a down payment for a net allowance of $1,075.00, leaving an unpaid balance of $2,385.77 plus $100.00 for insurance which Plaintiffs agreed to pay.

''That no completed Conditional Sales agreement was ever executed by the parties but a form was signed in blank and the only signed contract that was ever delivered to Plaintiff Elmer Adams was the pink purchase order which was incomplete and was not signed by Plaintiff Rose Adams and was contradictory in its terms as to the amount of the monthly payments, to wit: $49.43 being at the bottom and $99.43 in the body of the purchase order.

''That plaintiffs offered to rescind said agreement as not complying with their understanding of the agreement and tendered back said car on December 24th, 1953, which offer was refused by the Defendants.

"That Plaintiffs made 5 payments of $49.43 to the Defendant Commercial Credit Corporation in accordance with their understanding of said agreement, in addition to the said down payment, and then said last named Defendant refused to take further payments in said sum claiming the payments should be $99.43, and said corporation repossessed said automobile on or about May 26th, 1954."

From the foregoing findings and as conclusions of law as to defendant Caruso Enterprises Inc., the court determined, "That there was no meeting of minds between the parties and therefore no valid contract and that said contract did not comply with Section 2982 of the Civil Code of California.

"That Plaintiffs are entitled to get back from Defendant Caruso Enterprises Inc., their down payment represented by said Plymouth automobile valued at $1,225.00 less the sum of $412.50 being the difference in the rental value of the two automobiles, or a net sum of $812.50. . . ."

Whatever may be said of appellant's attack upon the sufficiency of the evidence to support the findings, it is manifest that the conclusion arrived at by the court that "there was no meeting of minds between the parties" is amply supported by substantial evidence as was the conclusion that the contract, viz., the white original memorandum and the yellow copy thereof delivered to respondents, did not comply with section 2982 of the Civil Code. This section provides in part that the contract ". . . shall recite the following separate items as such, in the following order:

". . . . . . . . . . . . .

"7. The amount of the time price differential." Appellant in its brief admits that, "Assuming, for the time being, that we must look to the yellow copy for compliance with Section 2982(a), the only provisions not explicitly set forth in separate figures are the time price differential and the unpaid balance." ▮ Appellant, however, insists that by mathematical computation of the figures appearing on the contract respondents could have ascertained what was the unpaid balance contemplated on the time price differential. But that is not substantial compliance with section 2982 of the Civil Code which requires that the contract "recite" the time price differential (*Estrada* v. *Alvarez*, 38 Cal.2d 386, 388 [240 P.2d 278]).

The very purpose of the code section would be defeated and nullified if the buyer was required to determine the

time price differential by a mathematical process arrived at from an analysis of the seller's figures. The law requires that this item must be recited in the contract and not left to a mathematical compilation by the buyer.

Finally, appellant asserts that the measure of damages found by the court is erroneous. In this regard, the court arrived at the amount of its judgment against appellant in the following manner. Respondents' down payment represented by their Plymouth automobile traded in at $1,225, less the difference between the rental values of the two automobiles at $412.50, amounting to a total of $812.50.

It is true, as contended by appellant, that under the contract the net allowance to respondents was $1,075, as pleaded and admitted by the latter in their second amendment to the first amended complaint, and not $1,225. The judgment should therefore be modified with reference to the down payment represented by the trade-in of respondents' Plymouth automobile, and the sum represented thereby should be $1,075 instead of $1,225.

With reference to the second item, appellant contends that the court was not authorized to deduct any sum for use of respondents' Plymouth automobile which was traded in. Appellant's position is that the Plymouth automobile was traded in and credit given in lieu of cash—that appellant was not in the business of buying motor vehicles for its own use but sells vehicles immediately on its used car lot. But appellant overlooks the fact that by reason of its own wrongful conduct, respondents were deprived of the use of their Plymouth automobile. We perceive no violation of either justice or equity in the action of the court wherein the loss of use of the respective vehicles was equalized.

For the foregoing reasons, the judgment as to appellant Caruso Enterprises Inc., is modified by reducing the amount thereof from $812.50 to $662.50, and as so modified the judgment is affirmed. Respondents to recover costs on appeal.

Doran, J., and Drapeau, J., concurred.