[Civ. No. 18990.   First Dist., Div. One.   June 30, 1960.]

TRI-CITY CREDIT BUREAU (Individual's Fictitious Name), Plaintiff and Appellant, v. ROSE T. BRIMMER, Respondent; GATEWAY CHEVROLET COMPANY (a Corporation), Cross-Defendant and Appellant.

Charles A. McClary for Plaintiff and Appellant.

Frank C. Vorsatz and John A. Putkey for Cross-Defendant and Appellant.

Richard J. Spear for Respondent.

DUNIWAY, J.—Appeal by J. C. Lynch, doing business as Tri-City Credit Bureau ("Tri-City"), plaintiff below, and by Gateway Chevrolet Company, a corporation ("Gateway"), cross-defendant below, from a judgment in favor of respondent Rose T. Brimmer ("Brimmer"). The action was brought in the municipal court by Tri-City, as assignee of Gateway, against Brimmer. The complaint pleads, according to its legal effect, and not in *haec verba,* a written agreement dated June *12,* 1957. This agreement is alleged to be a conditional sale agreement between Gateway as seller and Brimmer as purchaser of a Chevrolet car. The balance due is alleged to be $2,612.64, plus repossession costs of $381.52. It is stated that the car was sold for $2,075, leaving a net balance of $919.16. At the trial it appeared that the balance is $898.41.

Brimmer answered, denying that she made the pleaded contract of June *12,* 1957, but alleging that on June *11,* 1957, she entered into a conditional sale contract with Gateway, and denying any indebtedness. By way of cross-complaint against Gateway, she alleged that the June *11,* 1957, agreement was a conditional sale contract, but that it did not state the amount of the time price differential, the contract balance owed by her, the date for payment of the installments, nor the address to which any notice should be sent to her. She also alleged that no notice of intent to sell the car was sent to her. She demanded damages for conversion of the car, in an amount exceeding the jurisdiction of the municipal court.

The action was then transferred to the superior court (Code Civ. Proc., § 396). Gateway answered the cross-complaint, again alleging, according to its legal effect, a conditional sale contract dated June *12,* 1957, stating certain of its terms, and denying all other allegations of the cross-complaint.

The court found that Brimmer and Gateway, on June *11,* 1957, entered into a conditional sale contract. It found that the contract did not state the time price differential, the contract balance, the date for payment of the installments, or the address to which notice should be sent to Brimmer. It also found that Brimmer had paid $1,227.57 on account of the price, and concluded that the contract did not comply with Civil Code, section 2982, and gave judgment that Tri-City take nothing against Brimmer, and for Brimmer against Gateway for $1,227.57 plus costs.

It developed at the trial that Brimmer signed two agreements. One, dated June *11,* 1957, is entitled "Sales Order, Confirmation and Sales Agreement" and was completed and

signed by both parties on June *11*. It fits the description contained in the court's findings, not only as to date, but also in that it omits the things that the findings say are omitted. The other, dated June *12*, 1957, is entitled "Conditional Sale Contract." It does not fit the description contained in the findings, in that it is dated June *12*, not June *11*, and in that it does state the amount of the time price differential ($676.56), the contract balance ($3,615.49), the date for payment of installments (July 25, 1957, and on the same day of each successive month, for 36 months, including one special payment of $88.93, due July 12, 1957). It does not, however, state the address to which notice is to be sent to Brimmer. (This is immaterial; the provision in Civil Code, section 2982, relating to such address, was not enacted until after June 12, 1957.)

Brimmer testified, and in this she is partly corroborated by her son, that he arranged to buy the car before June 11, that she only visited Gateway's place of business once, on June 11, that her signature is on both contracts, although she remembers signing only one, the June 11, "Sales Order, Confirmation and Sales Agreement," that she got no copy of the June 12 "Conditional Sale Contract," and that she and her son drove the car away on June 11. The office manager of Gateway testified that when a car is sold, the "Sales Order, Confirmation and Sales Agreement" is made up and signed first. If it is accepted by the sales manager, then the "Conditional Sale Contract" is made up "in order to have a document to discount to the finance company." He denied that the latter is ever signed by the buyer in blank, but stated that he never saw Mrs. Brimmer. However, he also thought the "Conditional Sale Contract" was executed on its date, June 12, not June 11.

It thus appears that when the court refers to a conditional sale contract dated June 11, it is speaking of the "Sales Order, Confirmation and Sales Agreement" that was fully executed on June 11. Since the court found that Brimmer made the June *11* agreement, and found untrue all allegations of the complaint not found to be true, it found that she did not enter into the "Conditional Sale Contract" of June *12*. Construing the finding, as we must, to support the judgment, this would indicate that Brimmer signed the "Conditional Sale Contract" that is now dated June *12*, on June *11*, in blank (it was admitted by her that she signed it), and that it was completed by some Gateway employee and signed by Gateway's manager on June *12*. The documents themselves seem

to bear this out. The June *11* agreement is signed by Gateway's salesman, and the blanks are filled in in his hand. The June *12* agreement is signed by Gateway's office manager, but the blanks are in a hand quite different from his, and quite different from the salesman's. There is further corroboration in Brimmer's and her son's testimony that she went to Gateway at 5 p.m. on June 11, after work, and was there just a few minutes. The son testified that all the writing was done by the salesman in the presence of the son and Brimmer.

Admittedly, the June 11, 1957, agreement, if it is technically a conditional sale contract at all (a point which we need not decide), does not comply with Civil Code, section 2982. The "Conditional Sale Contract" having been signed in blank and not having been completed and signed for Gateway until June 12, likewise does not comply with that section and falls squarely within the rules announced in the following cases: *City Lincoln-Mercury Co.* v. *Lindsey,* 52 Cal.2d 267 [339 P.2d 851]; *Lewis* v. *Muntz Car Co.,* 50 Cal.2d 681 [328 P.2d 968]; *Estrada* v. *Alvarez,* 38 Cal.2d 386 [240 P.2d 278]; *Carter* v. *Seaboard Finance Co.,* 33 Cal.2d 564 [203 P.2d 758]; *Adams* v. *Caruso Enterprises, Inc.,* 134 Cal.App.2d 403 [285 P.2d 1022]. Under these cases, the judgment that Tri-City take nothing is clearly correct.

Gateway would be entitled to an offset for the reasonable value of the use of the car. However, no such offset was either pleaded or proved; Gateway elected to stand upon the June *12* agreement. We cannot conceive how Gateway could have failed to understand, at the trial, that Brimmer was relying on the June *11* agreement, and we find nothing in the record indicating that Brimmer has changed her theory on this appeal. The court's minute order for judgment cites *Lewis* v. *Muntz Car Co., supra,* 50 Cal.2d 681, in which the conditional sale contract was signed in blank, and the decision of the District Court of Appeal in City Lincoln-Mercury Co., *supra,* (Cal.App.) 331 P.2d 759, in which the conditional sale contract was signed in blank.

Affirmed.

Bray, P. J., and Tobriner, J., concurred.

A petition for a rehearing was denied July 20, 1960.